**SO ORDERED.**

**SIGNED October 31, 2006.**



_____
**HENLEY A. HUNTER
UNITED STATES BANKRUPTCY JUDGE**

_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

IN RE:                                                                                    CASE NO: 04-81845
    CRAWFORD SPENCER JAMES
    JAN MAURIE JAMES

### REASONS FOR DECISION

This matter comes before the Court on Cottonport Bank's Motion for Relief from Stay and Abandonment for the Limited Purpose of Obtaining Right of Way and the debtors' Opposition. This is Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (M) and (O). This Court has jurisdiction pursuant to 28 U.S.C. §1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 83.4.1 incorporated into Local Bankruptcy Rule 9029.3. No party at interest has sought to withdraw the reference and the district court has not done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, the Motion will be denied.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Debtors filed a voluntary petition under Chapter 13 on September 21, 2004, listing two parcels of real estate on Schedule A. One tract consisted of eight acres and the other was a

contiguous 36 acre tract. Debtors' plan proposed to keep the eight acre tract which comprised debtors' residence subject to a homestead exemption. The Cottonport Bank (hereinafter, "the bank") filed a claim in the amount of $2,006,062.12, plus interest at 18% and attorney fees of up to 25%. The claim lists a "Summary of Collateral" consisting of a judgment, being a Summary Judgment in various amounts rendered March 11, 2003, and a number of notes, commercial guaranty and pledge agreements. The debtors proposed to surrender the 36 acre tract to the bank, and it objected to confirmation.

The bank also sought relief from they stay based on its judicial mortgage affecting both tracts. On October 28, 2004, the Court held a hearing on the bank's Motion for Relief from Stay, at which time it was determined that the bank, being only a judgment creditor rather than a consensual lien holder, could not prevent the dismemberment of the two tracts of land, and the stay was lifted as to the non-residential property, but the motion was denied as to the residential tract. Once the stay was lifted as to the non-residential tract, the bank obtained the property by foreclosure. Two years later, the bank comes before the Court in the instant motion, alleging the tract is enclosed property, and seeks the lifting of the stay as to the residential tract for the purpose of obtaining a servitude of passage in the state court, pursuant to La.Civ.Code art. 694.

On December 9, 2004, this Court entered the Order submitted by counsel to the bank and counsel to the debtors, wherein the stay was lifted as to the 36.50 acre tract and abandoning the same from the estate. That order further provided that the stay shall remain in effect as to the debtors' eight acre tract, and contained provisions that would permit the lifting of the stay in the event of a default in maintaining insurance coverage or plan payments. The debtors' plan was confirmed on January 13, 2005.

On August 21, 2006, Cottonport Bank filed the instant motion to lift the automatic stay for the limited purpose of pursuing a right of way, to which debtors opposed. The thrust of the bank's motion is that as foreclosure proceedings on the 36 acre tract occurred, it was determined that there was no access or right of way to that tract except through the eight acre tract comprising the debtors family home. The bank alleges that the 36 acre tract became an "enclosed estate," without access to the nearest road, thus preventing a successful sale.

The bank asserts, notwithstanding its request for relief from the stay, that the stay does not actually apply in this instance under §362(a)(1) because the cause of action to obtain a right of way arose post-petition. Debtors oppose the bank's request for relief, asserting, *inter alia,* that the stay applies as the bank is seeking to "exercise control" over the property of the estate under §326(a)(3), and further, that the bank failed to meet its burden of establishing a prima facie case. Debtors argue that the bank has failed to establish the necessary standing to bring an action for such a right of way under the applicable state statute, asserting that the remedy is not available to the bank since its acquisition of the property was by a sheriff's sale, and thus involuntary. Louisiana Civil Code 693 provides that if a tract becomes enclosed as a result of a voluntary act or omission of its owner, the neighbors are not obliged to furnish a passage to him; and Civil Code article 694 provides that access may be sought if lost as a result of a voluntary alienation or partition, the neighbor shall be furnished by the neighbor gratuitously, even if the act of alienation or partition does not mention a servitude of passage.

The first issue to be determined is whether the automatic stay applies to the bank's cause of action to obtain the servitude of passage against the debtors' residential property. In Louisiana, a servitude is a real right and may follow the real estate to which it pertains, continuing as a charge

3

on the "servient estate" when ownership changes. La.Civ.Code art. 650. This Court concludes that the relief requested here is in fact the first of the historical components of ownership in Louisiana, which consists of *usus, fructus*, and *abusus*. Thus, by its terms, §362 prohibiting action to use or otherwise exercise control over of property of the estate applies. This court finds that the grant of a servitude constitutes a use of property and is thus barred by the automatic stay. Moreover, the Court points to the Order submitted by the parties dated December 9, 2004, since these parties have expressly stipulated that the automatic stay remains in effect as to the residential tract, that agreement is binding on the bank.

Having established that the stay applies, this Court turns to whether the Motion to Lift the Stay for the limited purpose of obtaining the servitude of passage should be granted. At the outset, the Court finds the bank's assertion that its knowledge of the access problem arose post-petition is disingenuous. The 36 acre tract and the eight acre home tract were purchased at different times for different purposes; the former being a failed commercial development, which was also evident from the commercial nature of the original loan agreements. (See "Summary of Collateral" attached to the bank's proof of claim, including numerous commercial guaranties, security agreements, and the legal description for the 36.50 tract expressly describing same as "[b]eing the same property acquired from the Cottonport Bank by Cash Deed Dated October 17, 1997, recorded in COB A-__ __, entry no. 97-___, records of Avoyelles Parish.") In short, the bank's own documentary support for its claim suggests that it was an ancestor in title. Further, the vice-president of the bank, Mr. Ben Luke, testifying in support of the instant motion, made a vague reference to another possible means of access to a public highway.

Bankruptcy courts have had the occasion to address requests for similar relief. In *Hudson*

4

*Valley Cablevision Corp. v. Route 202 Developers Inc.*, 169 B.R. 531 (Bankr.S.D.N.Y. 1994), relief from stay was sought to permit a cable televison company to determine its easement rights. The bankruptcy court recommended the matter be resolved by a stipulation that did not later materialize. Debtor made no showing of a hardship or interference with its reorganization plan. The bankruptcy court denied relief and the district court reversed on appeal, finding that since the cable lines already existed, permitting them to be serviced would not jeopardize the reorganization or the interests of other creditors, and thus the stay should be lifted.

The government's eminent domain power has been held not to constitute an exception to the automatic stay within the governmental police and regulatory power exception. *In re PMI-DVW Real Estate Holdings, L.L.P.*, 240 B.R. 24 (Bankr.D.Ariz. 1999). In that case, the Court held that a taking of the property under eminent domain constituted an effort to exercise control over the property. However, another bankruptcy court concluded that the government's eminent domain power did fall within the exception to the stay for the government's police or regulatory power. *In re Beville*, 2006 WL 2474849 (Bankr.N.D.Ala. 2006).

Here, however, this Court is not confronted with an exercise of the government's eminent domain power, but, instead, merely a dispute regarding a right of way or servitude. Looking to Louisiana law, in *Petrovich v. Trabeau*, 780 So. 2d 1258 (La.App. 4 Cir. 3/7/01), *writ denied*, 793 So. 2d 1251 (La. 6/15/01), Petrovich acquired a tract of land from his mother including a right of way over an adjacent lot, affording access to a public road. Petrovich's mother then conveyed another tract to Petrovich and his niece, Karen Trabeau, which also recognized the right of way. When the mother died, Petrovich and two other relatives acquired her remaining property interests. A partition ensued, in which Petrovich obtained sole ownership of a tract of land fronting on one

5

public road and another tract fronting on another highway. The original rights of passage in the earlier transactions were abandoned. Petrovich then lost tract of the largest tract of land at a sheriff's sale and then conveyed another tract with a right of way. Landlocked, he sought to obtain a right of way over the Trabeau property.

Relying on *Spotsville v. Herbert & Murrell, Inc*., 97-188 (La.App. 3 Cir., 6/18/97), 698 So. 2d 31, the Court discussed the proper application of Civil Code Articles 693 and 694. It concluded that Petrovich was not entitled to a right of passage due to his failure to pay his creditors. The court held that "[t]he intention of the Civil Code Articles allowing for the grant of a right of passage was to allow those people whose land is enclosed through no fault of their own to obtain servitude. To allow a person who has *voluntarily* lost a right of passage to obtain one through these Articles would go against the intent of the Civil Code and all logic." *Petrovich*, 780 So.2d at 1260. The Court noted that Petrovich did not seek a right of passage over the property he lost at sheriff's sale, which he might possibly have argued was a forced transaction, but the court found the sale resulted from Petrovich's own failure to pay his creditors.

Subsequent commentary notes that the interpretation of Article 693 in Petrovich may apply to situations where the enclosure at issue results from "juridical facts, i.e. debts arising from the fault of the landowner, which are ultimately remedied with the sheriff's sale." SCOTT D. HUFFSTETLER, DON'T FENCE ME IN: LOUISIANA'S FOURTH CIRCUIT EXPANDS "VOLUNTARINESS" UNDER LOUISIANA CIVIL CODE ARTICLE 693, 63 La.L.Rev. 111 (Fall 2002). The author notes that the standard "voluntary act or omission" is "both vague and ambiguous." *Id.* A broad interpretation of the phrase would be contrary to the Louisiana Supreme Court's prerogative of "favoring the right of passage." Thus, the writer notes, courts should interpret Article 693 narrowly.

Inasmuch as this Court's reading of Petrovich and the above commentary suggests that it is the debtors' own failure to pay their creditors that resulted in this imbroglio and that they are not entitled to rely on the Sheriff Sale as a factor that militates against granting relief to the bank, debtor's position that the transfer was involuntary is overstated. Given Louisiana's policy of favoring the right of way, this Court could conclude that relief should be granted if presented with a prima facie case of entitlement to the servitude under state law. But this Court finds the prima facie case only elusively presented in Mr. Luke's ambiguous testimony as to the existence of another route and the documentary facts showing the bank was itself once a prior owner of the enclosed tract, and thus an ancestor in title to the debtors. Further, before the Court can even reach the prima facie case issue, once finding the stay is in effect as to the residential property both by virtue of §362(a)(3) and by the parties' stipulation as to the application of the stay in the Order dated December 9, 2004, the Court further finds that superceding its own interpretation of Louisiana property law is the fact that the two contemplated means by which the stay could be lifted, namely debtors' failure to make plan payments and debtors' failure to maintain insurance, have not been raised. While this Court might normally defer to the state court's ultimate determination its property law, the parties are bound by both the plan and their own agreed order imposing the stay as to the residential property with the potential for relief from the stay linked to the debtors' failure to either make plan payments or maintain insurance on the property. This Court finds that absent the debtor's failure to make plan payments or maintain insurance, pursuant to the bank's own stipulation, the stay as to the residential tract remains in effect.

## Conclusion

Therefore, this Court concludes the residential tract is property of the Chapter 13 estate,

7

protected by the automatic stay, and further concludes the Motion to Lift the Stay should be denied for failure of the bank to support its motion to lift stay by alleging the previously stipulated grounds for relief and for further failing to present a prima facie case of entitlement to the servitude as a matter of state law.

Accordingly, Cottonport Bank's Motion for Relief from Stay and Abandonment for the Limited Purpose of Obtaining Right of Way is DENIED. A separate and conforming order will be entered.

# # #